**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY (CAMDEN)**

| | | |
|---|---|---|
| RICARDO FLOREZ and ELIZABETH PAGANO, on behalf of themselves and all others similarly situated, | : | |
| | : | |
| | : | |
| | : | CLASS ACTION COMPLAINT |
| Plaintiffs, | : | JURY DEMANDED |
| | : | |
| v. | : | |
| | : | |
| FREEDOM MORTGAGE CORPORATION, | : | |
| FREEDOM HOME MORTGAGE | : | |
| CORPORATION, and | : | |
| FREEDOM MORTGAGE & FINANCIAL | : | |
| SERVICES, INC. | : | |
| | : | |
| Defendants. | | |

Now come Plaintiffs, Ricardo Flores and Elizabeth Pagano, on behalf of themselves and all other similarly situated residents of the United States of America and allege as follows:

**PARTIES**

1.      Plaintiffs are residents of Raleigh, North Carolina who executed a mortgage deed of trust and note in November of 2012. Ex's. A and B. Their original lender was American National Bank and Trust Company.  In May of 2016, the mortgage was transferred or assigned to the Defendants.

2.      Defendants, Freedom Mortgage Corporation ("FM"), Freedom Home Mortgage Corporation ("FHM") and Freedom Mortgage & Financial Services, Inc., (FM&F) (hereinafter referred to collectively as "Freedom Mortgage"), are mortgage lenders and servicers of FHA Loans, VA Loans, and conventional mortgages.  Upon information and belief, FHM, incorporated in New Jersey with a principal place of business in Mount Laurel, New Jersey, is the parent company to subsidiaries FM, located in Ewing, New Jersey, and FM&F, which also does business

1

in the State of New Jersey.   The Defendants are not national banks, nor are they regulated by the Office of the Comptroller of Currency or governed by the National Bank Act.

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.  Additionally, at least one Class member is a citizen of a state different from the corporate domicile of the Defendant.

4.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that the class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical, there are substantial questions of law and fact common to the class, and this case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

      a.      questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

      b.      a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

      c.      the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

      d.      there are no unusual difficulties foreseen in the management of this class action.

5.     The Court has personal jurisdiction over the Defendants, who have at least minimum contacts with the State of New Jersey because the Defendants conduct business there, have offices there, and have availed themselves of the laws of New Jersey.

6.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue in the United States District Court for the District of New Jersey is proper because the Defendants' principal place of business is within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

8.      All conditions precedent to this action have occurred, been performed, or have been waived.

### FACTUAL ALLEGATIONS

### Misapplication of Mortgage Payments by Freedom Mortgage

9.      This action arises from the misapplication of mortgage payments by Freedom Mortgage.

10.     Freedom Mortgage regularly services residential mortgages nationwide.

11.     Many mortgage lenders and mortgage brokers encourage and solicit borrowers to pay their mortgage on an accelerated schedule.  The stated purpose is to reduce principal balance on an accelerated rate, thereby reducing the amount of interest paid on the loan, resulting in complete payoff of the loan in advance of the original payoff date.  For example, a borrower that pays one half of their monthly mortgage payments on a bi-weekly schedule will actually make twenty-six (26) payments in one year, totaling thirteen (13) full monthly payments, resulting in one extra "monthly" mortgage payment per year.  In addition to making one extra "monthly" mortgage payment every twelve months, paying on a bi-weekly schedule accelerates the payments in that the borrower is paying earlier than required under the mortgage, providing Freedom Mortgage earlier access to the monies.

12.    Because interest is calculated by multiplying the agreed upon interest rate by the remaining loan balance, a borrower paying any monies early and in excess of the scheduled monthly payment should realize a reduction in principal, and accordingly a reduction in the amount of interest paid, each time the early or excess payment is made.

13.    This fundamental payment practice is recognized in the Mortgage Deed of Trust and Note, as well as in all standard Fannie Mae/Freddie Mac uniform mortgage agreements. Lenders and servicers are required to apply amounts paid by the borrower in excess of the original scheduled monthly payments to the principal loan balance.  *See* Ex. A ¶ 2 ("Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.")

14.    Freedom Mortgage administers, services, and/or has an ownership or assignment interest many mortgages throughout the United States where the borrower has chosen to pay on accelerated schedule.

15.    Prior to enrolling in an automatic debited accelerated payment program, Freedom Mortgage requires borrowers to "pay forward" so that when a one half biweekly payment is received, the amount is not actually due at that time under the mortgage.

16.    However, despite the fact a borrower's account is debited for one half of their mortgage payment well before it is due, Freedom Mortgage has purposefully and deliberately failed or refused to apply excess payments to the principal loan balance.

17.    Rather than applying excess payments to a borrower's principal loan balance, Freedom Mortgage holds the funds in an "Unapplied Funds" account until additional funds are received to equal a full monthly mortgage payment regardless of whether the borrower is ahead of the original payment schedule.

18.     Freedom Mortgage pays the borrower no interest on the funds held in the "Unapplied Funds" account.

19.     Once the borrower is paid forward of the monthly amount due and owing on the mortgage, Freedom Mortgage does not apply additional, early payments directly to principal as required under the Mortgage.  Instead, Freedom Mortgage applies the additional, early payment as a new monthly payment for the following month.  Because Freedom Mortgage holds the additional early payment in an "Unapplied Funds" account allowing it early access to the funds, it does not reduce principal in an accelerated manner.  As a direct result, Freedom Mortgage collects more interest than allowed under the terms of the Mortgage and Note because the principal has not been reduced by the unapplied funds when the interest is calculated and assessed.

20.     Freedom Mortgage's practices and procedures deprive borrowers of the reduction in principal and interest at the time of the excess payment, thereby causing more funds than required to be applied to interest on each future payment.

21.     Freedom Mortgage's practices and procedures of holding excess payments in an "Unapplied Funds" account further deprives the borrower of interest each day on the excess funds held.

22.     Upon information and belief, the excess payments that Freedom Mortgage receives mid-month, the payments that amount to less than a full monthly mortgage payment that are designated as "Unapplied," are moved into an interest-bearing account for which Freedom Mortgage retains the proceeds and profits, or at a minimum are considered for accounting purposes as capital reserves or the equivalent thereof of the Defendants.

### Plaintiffs Ricardo Flores and Elizabeth Pagano

23.    On November 21 of 2006, Ricardo Flores and Elizabeth Pagano entered into a Deed of Trust mortgage agreement with American National Bank and Trust Company as the security instrument for the purchase of their home at 3613 East Jameson Road, Raleigh, North Carolina 27604.  Plaintiffs also executed a Note. Ex's. A and B.  In May of 2016, the mortgage was assigned or transferred to Freedom Mortgage for servicing.

24.    Plaintiffs' monthly mortgage payment of $842.57 is due once per month.

25.    When the servicing was assigned or transferred to Freedom Mortgage in 2016, Plaintiffs were given an option to enroll in a bi-weekly accelerated mortgage payoff program.

26.    Among other things, the program offered to debit one-half of Plaintiffs' monthly mortgage payment bi-weekly, thereby effectuating twenty-six (26) bi-weekly payments per year.

27.    The purpose of the program was to reduce the principal balance of the loan at an accelerated rate, thereby both reducing the amount of interest paid by Plaintiffs and resulting in paying off the loan in its entirety years earlier than scheduled.

28.    After paying an amount to their account forward of the mortgage payment schedule, as required by the Freedom Mortgage biweekly payment program, Plaintiffs' account has been debited bi-weekly for one half of the required monthly amount in accordance with the program beginning on April, 2016.

29.    Rather than applying the Plaintiffs' excess payments directly to the loan principal balance, Freedom Mortgage has applied only one cent ($0.01) to principal and holds the remaining amount in an "Unapplied Funds" account until additional funds are received to equal a full monthly payment.  Freedom Mortgage does not apply additional, early payments directly to principal as required under the Mortgage.  Instead, Freedom Mortgage applies the additional, early payment as

a new monthly payment for the following month. Because Freedom Mortgage holds the additional early payment in an "Unapplied Funds" account allowing it early access to the funds, it does not reduce principal in an accelerated manner. As a direct result, Freedom Mortgage collects more interest than allowed under the terms of the Note because the principal has not been reduced by the unapplied funds when the interest is calculated and assessed.

30.     Freedom Mortgage has paid Plaintiffs no interest on the funds held in the "Unapplied Funds" account.

31.     Freedom Mortgage's practices and procedures deprived Plaintiffs of the reduction in principal and interest at the time of the excess payment and continuing to date, thereby causing more funds than required to be applied to interest on each future payment.

32.     Upon information and belief, the excess payments that Freedom Mortgage receives from the Plaintiffs mid-month, the payments that amount to less than a full monthly mortgage payment that are designated as "Unapplied Funds", are moved into an interest-bearing account for which Freedom Mortgage retains the proceeds and profits.

## CLASS ALLEGATIONS

**A.    Class Definitions**

33.     Plaintiffs bring this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiffs seek to represent the following classes:

> All borrowers in good standing who made mortgage payments to Freedom Mortgage in excess of their monthly scheduled payment pursuant to an accelerated payment program.

> All borrowers in good standing who made mortgage payments on properties in the State of New Jersey to Freedom Mortgage in excess of their monthly scheduled payment pursuant to an accelerated payment program.

> Excluded from these classes are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, class counsel in this matter and the Court personnel in this matter.

34.    Plaintiffs reserve the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

35.    Defendants subjected Plaintiffs and the respective Class Members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B.    Numerosity**

36.    The proposed classes are so numerous that joinder of all members would be impracticable.  Freedom Mortgage services a large number of mortgage loans nationwide.  The individual Class Members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Freedom Mortgage.  The precise number of class members for each class numbers at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**C.    Commonality**

37.    There are questions of law and fact that are common to Plaintiffs and Class Members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

> a.    Whether Freedom Mortgage failed or refused to apply excess payments made by borrowers to their loan principal balance as required by law or the borrowers' mortgage agreements;

b.      Whether Freedom Mortgage breached the mortgage contracts with Plaintiffs and the Class by failing or refusing to apply excess payments made by borrowers to their loan principal balance as required by law or the borrowers' mortgage agreements;

c.      Whether Freedom Mortgage placed excess mortgage payments in an interest-bearing account and retained the interest earned;

d.      Whether Freedom Mortgage was negligent in failing or refusing to apply excess payments made by borrowers to their loan principal balance as required by law or the borrowers' mortgage agreements;

e.      Whether Freedom Mortgage has been unjustly enriched in failing or refusing to apply excess payments made by borrowers to their loan principal balance as required by law or the borrowers' mortgage agreements;

f.      Whether Freedom Mortgage intentionally and unjustifiably interfered with Plaintiffs' and the Classes' rights under the mortgage contracts by requiring borrowers to pay more interest on their mortgage than they should have and also profiting from interest on funds held in an "Unapplied Funds" account;

g.      Whether Defendants misrepresented or omitted material facts regarding the way accelerated mortgage payments would be applied in that the manner in which interest on the mortgage is calculated based on the accelerated payments and/or the time that it would take to pay off the loan based on the accelerated payments has not been adequately or appropriately communicated to borrowers;

h.      Whether Plaintiffs and the Class Members are entitled to damages and/or injunctive relief as a result of Freedom Mortgage's conduct.

## D.    Typicality

38.     Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are typical of the respective classes' members' claims because of the similarity, uniformity, and common purpose of Freedom Mortgage's unlawful conduct.  Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs have as a result of Freedom Mortgage's wrongful conduct.

## E.    Adequacy of Representation

39.     Plaintiffs are adequate representatives of the classes they seek to represent and will fairly and adequately protect the interests of the classes.  Plaintiffs are committed to the vigorous

prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between Plaintiffs and the unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

40.    To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.    Requirements of Fed. R. Civ. P. 23(b)(3)**

46.    The questions of law or fact common to Plaintiffs and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the classes. All claims by Plaintiffs and the unnamed class members are based on the misapplication of excess mortgage payments.

47.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even if there will be some individualized damage determinations.

48.    As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.    Superiority**

49.    A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

    a.    Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

    b.    Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake. As a result, individual class members may have no interest in prosecuting and controlling separate actions;

c.      There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

d.      The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

e.      Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

## H.    Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

50.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

51.     Defendants have acted or failed to act in a manner generally applicable to the entirety of the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes as a whole.

## <u>COUNT I</u>
## BREACH OF CONTRACT

52.     Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

53.     Upon information and belief, Freedom Mortgage was assigned and/or serviced the home mortgage loans of the Plaintiffs and the Classes.

54.     Plaintiffs and all similarly situated Class Members have mortgages that are assigned and/or serviced by Freedom Mortgage.

55.     Plaintiffs and these Class Members' mortgages are written on uniform mortgage forms and contain the same or substantially similar provisions regarding the application of excess mortgage payments. *See* Ex. A ¶ 2.

56.     After excess payments are applied to other amounts due, Plaintiffs' mortgage requires Freedom Mortgage to apply excess mortgage payments to "reduce the principal balance" of the loan. *Id.*

57.     Similarly, Plaintiffs and these Class Members were issued Mortgage Notes which are uniform forms and contain the same or substantially similar provisions regarding the application of excess mortgage payments. *See* Ex. B.

58.     The Note includes the following language:

**4.     BORROWER'S RIGHT TO PREPAY**

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.

*Id.*

59.     This language is the same or substantially similar to provisions within Notes for all Class Members regarding the application of excess mortgage payments, and requires the servicer to apply excess mortgage payments directly to principal rather than hold payments in an "Unapplied Funds" account or apply excess payments to the schedule's next month's monthly mortgage payment.

60.     Freedom Mortgage's practices and procedures deprive borrowers of the reduction in principal and interest at the time of the excess payment, thereby causing more funds than required to be applied to interest on each future payment.

61.     Freedom Mortgage's practices and procedures of holding excess payments in an "Unapplied Funds" account further deprives the borrower of interest each day on the excess funds held in a "Unapplied Funds" account and constitutes a breach of contract.

62.     Freedom Mortgage's refusal to apply excess mortgage payments to Plaintiffs' and the Class members' principal constitutes breach of contract.

63.    Plaintiffs and the Class Members have suffered damages as a result of Freedom Mortgage's breaches of contract.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

64.    Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

65.    A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

66.    Plaintiffs' and the Class Members' mortgage contracts require Freedom Mortgage to apply excess mortgage payments to "reduce the principal balance" of the loan.

67.    Freedom Mortgage breached the implied covenant of good faith and fair dealing by, among other things, failing or refusing to apply excess payments to a borrower's principal loan balance, holding the funds in an "Unapplied Funds" until additional funds are received to equal a full monthly payment, and holding excess payments in an "Unapplied Funds" account for which it retains interest proceeds for its own profits.

68.    As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiffs and the Class have suffered damages.

## COUNT III
## (On behalf of the New Jersey Class)
## VIOLATION OF THE NEW JERSEY
## CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, *ET SEQ.*,

69.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint and incorporates such paragraphs by reference.

70.     Plaintiffs and other members of the class are "persons" within the meaning of *N.J.S.A.* 56:8-1(d).

71.     Defendants' conduct alleged herein constitutes a "sale" within the meaning of *N.J.S.A.* 56:8-1(e).

72.     The New Jersey Consumer Fraud Act ("NJCFA") declares unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]"  *N.J.S.A.* 56:8-2.

73.     Defendants have engaged in unfair, unlawful and deceptive acts in trade and commerce which have the capacity and tendency to deceive and, in fact, did deceive Plaintiffs and the class, and damaged Plaintiffs and class members.

74.     Defendants represented that by making mortgage payments pursuant to an accelerated schedule, either as a quarter of a monthly mortgage payment weekly or half of a mortgage payment bi-weekly, borrowers would pay less in interest over the life of the mortgage and the mortgage would be paid off at an expedited rate.  In fact, based on the manner and method by which accelerated mortgage payments were actually applied by the Defendants, the amount of interest paid on the mortgages was greater than it should have been, the Defendants negotiated for themselves a guaranteed, no interest loan for half the mortgage amount for half of every month, and the loan would not be paid off as quickly as it should have been paid off given the accelerated payment schedule.

75.     Defendant committed an unlawful, deceptive, and unconscionable trade practice by inducing its customers to switch to and/or remain in the accelerated payment plan with Defendants and then proceeding to apply the payments in a manner that purposefully resulted in collecting more interest from the borrowers.

76.     Defendant wrongfully concealed, suppressed, and omitted to disclose that the way it applied the accelerated payments would result in it collecting more interest from the borrowers and that the life of the mortgage would be elongated such that borrowers would not save as much money as they should have and the Defendants would reap undue profits at their expense.

77.      Defendants' misrepresentations and omissions had the capacity to mislead Plaintiffs and the members of the class into believing (i) that they would pay less in interest over the life of the mortgage than the actual would, (ii) that every payment made would be applied to their account rather than held by Defendants in a non-interest bearing account until enough money was accumulated in that account to equal at least a full monthly payment, and (iii) the mortgage would be paid off sooner than it would in fact be paid off.  Plaintiffs and the class members were injured as a result.

78.     Because of Defendants' unlawful, deceptive, unfair, and unconscionable trade practice and scheme, Plaintiffs and other members of the class have suffered injury and damages in an amount to be determined at trial.  Pursuant to the NJCFA, this court has the power to enjoin the Defendants' conduct.  Unless enjoined by this court, Defendants will continue their unlawful practice to borrowers on New Jersey properties.

## COUNT IV
## UNJUST ENRICHMENT[1]

79.     Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

80.     Freedom Mortgage and/or its affiliates received from Plaintiffs and Class Members benefits, in the form of funds earned on interest it has held and continues to hold in an "Unapplied Funds" account.

81.     Further, Freedom Mortgage received financial benefits in the form of increased interest income due to its own deliberate and purposeful failure or refusal to apply excess payments by Plaintiffs and the Class to the mortgage principal loan balances.

82.     In addition, Freedom Mortgage received financial benefits in the form of increased security on the notes in that the payments were attributable to later payments due rather than towards equity on the property.

83.     As a result, Plaintiffs and the Class have conferred a benefit on Freedom Mortgage.

84.     Freedom Mortgage had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

85.     Freedom Mortgage will be unjustly enriched if it is allowed to retain the aforementioned benefits, and each Class Member is entitled to recover the amount by which Freedom Mortgage was unjustly enriched at his or her expense.

---

[1] Plaintiffs and the Class plead unjust enrichment as an alternative to their contractual claims.

## COUNT V
## NEGLIGENCE

86.    Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

87.    Plaintiffs' mortgage requires Freedom Mortgage to apply excess mortgage payments to "reduce the principal balance" of the loan, constituting a material breach.

88.    As the assignee or servicer of mortgage loans (or the holder of pertinent rights thereunder) of the Plaintiffs and the Class, Freedom Mortgage owes a duty of care them.

89.    Freedom Mortgage's practices and procedures of holding excess payments in an "Unapplied Funds" account for a period of time, rather than applying those excess funds to the principal amount when received, deprives Plaintiffs and the Class of a reduction in principal and interest at the time of the excess payment.  Consequently, as a result, more funds are applied to interest on each future payment, thereby causing damages to Plaintiffs and the Class.

90.    Freedom Mortgage failed to exercise reasonable care to avoid harm to Plaintiffs and the Class.

91.    Freedom Mortgage's failure to apply excess mortgage payments to Plaintiffs' and the Class Members' mortgages constitutes negligence.

92.    Plaintiffs and the Class members have suffered damages as a result of Freedom Mortgage's negligence.

## COUNT VI
**CONVERSION**

93.    Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

94.    Freedom Mortgage had and continues to have a duty to maintain and preserve the funds of Plaintiffs and the Class Members, and to prevent their diminishment through Freedom Mortgage's own wrongful acts.

95.    By holding excess payments in an "Unapplied Funds" account for a period of time, rather than applying those excess funds to the principal amount when received, without Plaintiffs' and the Class Members' consent, and failing to inform Plaintiffs and the Class Members of the "Unapplied Funds" account process, Freedom Mortgage has, without proper authorization, assumed and exercised the right of ownership over Plaintiffs' and the Class Members' funds, in hostility to the rights of Plaintiffs and other Class Members without legal justification.

96.    Freedom Mortgage has wrongfully collected payments from Plaintiffs and the Class Members, and has taken their specific and readily identifiable funds.

97.    Freedom Mortgage continues to retain these funds unlawfully and without the consent of Plaintiffs or Class Members.

98.    Freedom Mortgage intends to permanently deprive Plaintiffs and the Class Members of these funds.

99.    These funds are properly owned and identifiable by Plaintiffs and the Class Members, not Freedom Mortgage. Yet, Freedom Mortgage now claims that it is entitled to the funds' ownership, contrary to the rights of the Plaintiff and the other Class Members.

100.    Plaintiff and the Class Members are entitled to immediate possession of these funds.

101.    Freedom Mortgage has wrongfully converted these specific and readily identifiable funds.

102.    As a direct and proximate result of this wrongful conversion, Plaintiffs and the Class Members have suffered and continue to suffer damages.  Freedom Mortgage's wrongful conduct is continuing.

103.    By reason of the foregoing, Plaintiffs and the other Class Members are entitled to recover from Defendants all damages and costs permitted by law, including all amounts that Freedom Mortgage has wrongfully converted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated individuals, demands judgment against the Defendants as follows:

1.    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Classes;

2.    Enjoining Freedom Mortgage from continuing the acts and practices described above;

3.    Awarding damages sustained by Plaintiffs and the Classes as a result of Defendants' breaches of the mortgage contracts and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

4.    Awarding any and all damages sustained by Plaintiffs and the New Jersey Class as a result of Defendants' violation of the New Jersey Consumer Fraud Act, together with pre-judgment interest;

5.      Finding that Freedom Mortgage have been unjustly enriched and requiring it to refund all unjust benefits to Plaintiffs and the Classes, together with pre-judgment interest;

6.      Finding Freedom Mortgage converted the Classes' funds and requiring a full refund of all funds converted;

7.      Awarding Plaintiffs and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the Classes' counsel and experts, and reimbursement of litigation expenses; and

8.      Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiffs and the Classes request a jury trial for any and all Counts for which a trial by jury is permitted by law.

**Dated:  August 1, 2017**                             */s/ Kenneth J. Grunfeld*

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:    (215) 985-4169
Email: rgolomb@golombhonik.com
        kgrunfeld@golombhonik.com

Joseph "Jay" H. Aughtman, Esquire
Aughtman Law Firm, LLC
1722 Platt Place
Montgomery, AL 36117
Phone: (334) 215-9873
Fax:    (334) 213-5663
Email: jay@aughtmanlaw.com
(*pro hac* application will be sought)

Aaron C. Hemmings, Esquire
Hemmings & Stevens, P.L.L.C
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
Fax:    (919) 277-0162
Email: ahemmings@hemmingsandstevens.com
(*pro hac* application will be sought)

*Attorneys for Plaintiffs and the Classes*